WHITE ET AL. *v.* STATE OF INDIANA, EX REL.
HUFF ET AL.

[No. 22,835. Filed October 29, 1915.]

1. INTOXICATING LIQUORS.— *Transfer of License.— Bond.—Sufficiency.—Statutes.*—Where the transfer of a retail liquor license had been authorized by the board of county commissioners, the execution by the original licensee of an endorsement on his bond assigning his interest to the transferee, subject to the consent of the surety company, followed by an endorsement of the surety company consenting that the bond be assigned subject to all its terms and conditions, together with an endorsement thereon of the auditor's approval and the order of the board of commissioners, was sufficient within the requirements of §8323 Burns 1914, Acts 1911 p. 245, §12, for the filing of a new bond in case a license is transferred, and in any event the transferee and surety company were bound thereby under §1278 Burns 1914, §1221 R. S.

1881, the force and effect of which is to cure defects and supply omission in bonds.   p. 654.

2. INTOXICATING LIQUORS.—*Civil Damages.—Proximate Cause.— Complaint.—Sufficiency.*—A complaint under the civil damage statute for injury to means of support from the unlawful sale of intoxicating liquor to the husband and father of plaintiffs, alleging that he was so incapacitated by the intoxication as to be unable to manage his horses properly, that because of such incapacity the horses became irritable, fractious and unmanageable, that while he was intoxicated and the team unmanageable he leaned over the dashboard, and that as he did so one of the horses, irritated and made fractious by his acts, kicked him, inflicting injuries from which he died, sufficiently averred the connection between the intoxication and injury.   p. 655.

3. APPEAL.—*Presenting Questions for Review.—Refusal to Direct Verdict.*—The refusal of the trial court to direct a verdict by peremptory instruction can not be made available by an independent assignment of error on appeal, but must be presented through the medium of a motion for new trial.   p. 655.

4. APPEAL.—*Review.—Motion for New Trial.—Waiver.—Briefs.*— Grounds set out in a motion for new trial which are not specifically referred to under points and authorities in appellant's brief are waived.   p. 655.

5. INTOXICATING LIQUORS.—*Civil Damages.—Unlawful Sale.—Evidence.--Sufficiency.*—In an action for damages to means of support by reason of death from intoxication caused by the unlawful sale of liquor, evidence showing that decedent was sober when he came to town, that he was in and about defendant's saloon from before 5 p. m. until 9 p. m. and drank therein during the afternoon, that while there he became boisterous and was ejected, that he bought liquor in other saloons and was boisterous on the streets during the afternoon and evening, that he was drunk at 5 p. m., and that he drank a glass of beer in defendant's saloon some time between 4 p. m. and 5 p. m., was sufficient to warrant the jury in finding that defendant sold intoxicating liquor to decedent while he was in a state of intoxication.   p. 656.

6. INTOXICATING LIQUORS.—*Civil Damages.—Death from Intoxication.—Evidence.*—Evidence showing that in the morning following the afternoon of his intoxication the body of decedent, who was a good farmer and experienced in managing horses, was found in his wagon in such a position and accompanied by appearances and conditions indicating that he had been kicked to death by one of the horses while leaning over the dashboard, that underneath him was an open and half-empty flask of whiskey, that the horses had not kept the road all the way and in places the track waved about, etc., afforded justification for the jury's con-

clusion that decedent's physical disability and death resulted from intoxication. p. 657.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by the State of Indiana, on the relation of Ida Huff and others, against James White and another. From a judgment for plaintiffs, the defendants appeal. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*William Espenschied, George Wm. Curtis* and *George C. Taylor,* for appellants.

*G. V. Menzies,* for appellees.

Cox, J.—This appeal is from a judgment recovered by appellees, the widow and children of Lewis E. Huff, deceased, in an action on a retail liquor dealer's bond to recover statutory damages for loss of support through his death. §8355 Burns 1908, §5323 R. S. 1881; §8323 Burns 1914, Acts 1911 p. 363, §8. The first error assigned by appellants is that the trial court erred in overruling their demurrers to the complaint. The complaint was in one paragraph and alleged: "That relators are the widow and only surviving children of one Lewis E. Huff, deceased; that said relators were entirely dependent for their support and maintenance upon said Lewis E. Huff, who died on March 13, 1912, as a result of the grievance hereinafter alleged; that on April 3, 1911, one Alfred Spillman made application for, and was granted, a license by the board of commissioners of Posey County, Indiana, to sell intoxicating liquors at the town of New Harmony, Indiana, and executed his bond in the penal sum of $3,500 with the defendant, The Bankers Surety Company of Cuyahoga County, Ohio, as surety thereon, conditioned that said Spillman, among other things, would pay all civil damages growing out of unlawful sales of intoxicating liquors, or other unlawful conduct on the part of said Spillman, which bond was filed with the auditor of Posey County, Indiana, and a copy thereof is attached to the com-

plaint and marked exhibit A; that, on October 2, 1911, Spillman made application and request to the board of county commissioners of Posey County, Indiana, and was granted the right by said board to transfer said license to the defendant James White, and that White accepted said sale and transfer and entered into business as a saloon keeper upon the same terms and conditions mentioned in said license to Spillman, in the same premises in New Harmony, Indiana; that on the sale and transfer of said license the defendant, The Bankers Surety Company of Cuyahoga County, Ohio, filed its written consent with said board of commissioners to said sale and transfer and its covenants with said board to be bound thereon, as obligor to said White, in all things the same as it had theretofore been bound for said Spillman, and that said covenant is filed with said complaint and marked exhibit B; that this covenant was approved by the auditor of Posey County, which approval is filed with the complaint and marked exhibit C; and that thereupon White commenced to sell intoxicating liquors and keep a saloon under and by virtue of said license. That Huff, on March 13, 1912, was a farmer about 42 years old living on a public highway four miles south of New Harmony and was a strong, healthy and industrious man who earned a good support and maintenance for the relators who were at that time entirely dependent upon the decedent for their support and maintenance; that Huff, on the afternoon of March 13, 1912, while sober drove a road wagon, with a gentle team of horses attached thereto, from his home over the highway to New Harmony, that he arrived at New Harmony and visited the saloon of defendant, White; that on the said thirteenth day of March, 1912, the defendant White or his barkeeper and agent, unlawfuly sold or gave decedent intoxicating liquor when decedent was in a state of intoxication, which was known to White, his barkeeper or agent; that by reason of and as a result of the intoxication of decedent, caused as aforesaid by the unlawful selling or giving

to decedent, intoxicating liquors by White or his agent, the defendant became incapacitated for managing and driving his team of horses, and, as a result of said intoxication, when driving his team of horses decedent was liable to receive fatal injuries, that the decedent when intoxicated started, after dark, on March 13, 1912, to drive said team of horses, attached to said wagon, from New Harmony over said public highway to his home. That as a result of and caused by said intoxication, the decedent was incapacitated from properly managing, controlling or driving said team of horses; that said team of horses, on account of and caused by decedent's incapacity to properly drive and control them became irritable, fractious and unmanageable by decedent; that the decedent when intoxicated leaned over the dashboard of said wagon and as he leaned over said dashboard, said team, or one horse thereof, was irritated and made fractious and unmanageable by the acts of decedent, when so intoxicated, to such an extent that the horse kicked decedent on the head and face, causing him fatal injuries and as a result of his injuries decedent died and was found dead the next morning in said wagon near his home. That the death of decedent was caused by the unlawful selling or giving to him by defendant, White, or his agent, of intoxicating liquors as aforesaid. That by reason of the premises relators have been injured in their means of support in the sum of $3,500 for which sum they demand judgment."

Exhibit "A" was the usual form of bond provided by law for liquor dealers and originally executed by Alfred Spillman and The Bankers Surety Company as surety. Exhibit "B" shows by endorsement on the original Spillman bond that on October 2, 1911, the interest of Spillman was assigned to appellant White, subject to the consent of The Bankers Surety Company, and this was signed by Alfred Spillman and thereafter there appears endorsed on said bond the consent of The Bankers Surety Company that the bond be assigned to White, subject to all its terms and con-

ditions. This was signed by The Bankers Surety Company by Edwin Wade, its attorney in fact. Exhibit "C" was the approval of the auditor of Posey County to such assignment and consent and the order of the board of commissioners thereon.

In behalf of appellant surety company it is claimed that the complaint fails to state a cause of action against it for the reason that the law which permits the transfer of 1. a retail liquor dealer's license, by its terms, requires that the transferee, before he can secure approval of the transfer and rights thereunder shall give a new bond. §8323o Burns 1914, Acts 1911 p. 254, §12. And it is contended that the bond counted upon by complaint is not such a bond and hence does not impose any liability upon appellant surety company. The statute in case a license is transferred requires the "filing of a bond by such purchaser * * * with the same penalties and upon the same conditions as is required of applicants for licenses". There is no doubt that the bond in question meets all of the requirements of the statute as fully as if an entirely new instrument had been executed by appellants. Even if a new bond were intended by the statute the assignment of the old bond, as made, amounts to a new agreement on the part of appellant surety company to become the guarantor of White in his undertaking legally to conduct a licensed saloon, such agreement being in an instrument with the "same penalties and upon the same conditions" as the bond of the transferer of the license. It was in no respect the same undertaking as that which was the guaranty of the conduct of Spillman, the original licensee. In any event §1278 Burns 1914, §1221 R. S. 1881 would require us to hold appellants bound to discharge the statutory conditions of the bond in the circumstances averred, for it has often been held that the force and effect of this section is to cure defects and supply omissions in such bonds, whether the defects and omissions be of form or substance, and to hold the obligors, both prin-

cipals and sureties to the full extent of the law requiring the bond. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, and cases there cited.

There is further contention by both appellants that the complaint fails to allege that the death of Huff was the result of his intoxication and for that reason that the

2. demurrers of both should have been sustained. The averments of the complaint charge in sufficient terms that the intoxication incapacitated decedent to manage his horses properly; that because of his incapacity to control and direct them the horses became irritable, fractious and unmanageable; that while decedent was so intoxicated and while the team was in this state, he leaned out over the dashboard and as he did so one of the horses irritated and made fractious by his acts kicked him on the head and face, inflicting injuries from which he died. The connection between Huff's intoxication and his injury is sufficiently averred. *Homire* v. *Halfman* (1901), 156 Ind. 470, 60 N. E. 154.

Refusal of the trial court to direct a verdict for appellants by peremptory instruction is assigned as error. This can not be made the basis for an independent assign-

3. ment of error on appeal. Such action must be presented to the trial court as a cause for a new trial and the court's refusal to grant such new trial assigned for error to be available. *Bane* v. *Keefer* (1899), 152 Ind. 544, 53 N. E. 834; *United States, etc., Ins. Co.* v. *Batt* (1912), 49 Ind. App. 277, 97 N. E. 195; *Deeter* v. *Burk* (1915), 59 Ind. App. 449, 107 N. E. 304.

A joint motion for a new trial filed by appellants was overruled and this ruling is assigned as error. The motion was based on the alleged insufficiency of the evidence

4. in fact and law to sustain the verdict, on the giving of certain instructions and the refusal to give others and on the admission of certain testimony alleged to have been incompetent. No specific reference is made in that

part of appellant's brief devoted to propositions or points and authorities to any instruction either given or refused nor to any testimony admitted. These causes for a new trial are, therefore, under the rules waived. Clause 5, Rule 22; *Kaufman* v. *Alexander* (1913), 180 Ind. 670, 103 N. E. 481; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Mutual Life Ins. Co.* v. *Finkelstein* (1915), 58 Ind. App. 27, 107 N. E. 557.

This leaves for consideration only the question whether there was error in overruling the motion for a new trial on the ground that the evidence is insufficient to sustain the verdict. We understand that appellants claim that the evidence fails in two particulars. The first is that there was no evidence to show that appellant White or his agent or servant "unlawfully sold or gave intoxicating liquor" to Huff at the time when he was intoxicated; and the second that there was none to prove that Huff was intoxicated at the time of his death or that his death was the result of his intoxication. A review of the evidence shows the following as to these contentions: Huff was sober when he came to town on the afternoon of his death; he was a quiet, inoffensive man when sober; he was in and about appellant White's place from before 5 p. m. to about 9 p. m.; he drank some in White's saloon during the afternoon; while there he got into a very boisterous and threatening argument which was so serious as to cause his expulsion from the saloon; he bought liquor at other saloons during the afternoon; he was boisterous and noisy on the streets and in front of White's saloon during the afternoon and evening; two witnesses testify that he was drunk at or near 5 p. m. at which time he was in and about White's place; one witness, on cross-examination, admitted that he was "kinda drunk" when he saw him at 5 p. m. near White's; another witness testified Huff drank a glass of beer in White's saloon sometime between 4 and 5 o'clock in the afternoon. In the face of this evidence it can not be said that there was no evidence

from which the jury might reasonably find that appellant White sold intoxicating liquors to decedent while decedent was intoxicated. It was warranted in finding it from his conduct within and without the saloon, and from the direct testimony of competent witnesses. 23 Cyc. 325 §d, and cases there cited.

On the questions of his continuing drunkenness and the cause of his death the following appears: Huff was found the following morning lying on his back in his wagon, his feet bent back underneath him and his knees up against the dashboard, as if he had been sitting on his knees. His face was mashed, his teeth knocked in, and his nose broken. No other wounds were seen. He was cold and stiff. Underneath him was an open, half-emptied flask of whiskey. There was some horse hair on the right hand side of the dashboard the same shade as that on the right hand horse's leg, where some had been freshly knocked off just above the hoof. Huff's cap was found in the ditch some distance from where his body was found. The horses had not kept the road all the way; in some places the track waved about. Where the cap lay there were tracks which impressed the witness as having been made by a sudden forward motion of the right hand horse; as if he had "perted up and stepped further than the other". A witness testified, "and the tracks seemed like something had hit him and scared him"; this of the right hand horse. Huff had been a successful and careful farmer. From these facts it can not be said that there was no evidence to sustain the verdict and judgment. Huff was a good farmer with years of experience in managing horses. The circumstances including the character of his driving on the night of his death were ample evidence of his physical incapacity to handle the team in his accustomed manner. Having found that he was drunk shortly before he left town and that he carried with him a flask of whiskey which had been partly emptied the jury might well

conclude that the cause of his physical disability and the cause of his death was his intoxication.

No harmful error is shown and the judgment is affirmed.

NOTE.—Reported in 109 N. E. 905. As to civil remedies arising out of sale or gift of intoxicating liquors, see 25 Am. Rep. 362. On necessity in order to support a recovery under civil damage act, that the intoxication be the proximate cause of the injury, see 13 L. R. A. (N. S.) 1158; 50 L. R. A. (N. S.) 858. See, also, under (2) 23 Cyc. 322, 323; (3) 3 C. J. 979; 29 Cyc. 752; (4) 3 C. J. 1409, 1412; 2 Cyc. 1013, 1014; (6) 23 Cyc. 326.